CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

SARA E. HENDERSON (CABN 329977)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7181
    Fax: (415) 436-7234
    Sara.Henderson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 25-mj-70736 MAG |
| Plaintiff, | UNITED STATES' MEMORANDUM IN SUPPORT OF APPEAL OF RELEASE ORDER |
| v. | |
| VICTOR ANTHONY MASON JR., | |
| Defendant. | |

## INTRODUCTION

The United States respectfully requests that the Court reverse the order of release of Defendant Victor Anthony Mason, Jr. by the Magistrate Judge. The defendant has a long history of violent and dangerous conduct, fleeing and obstructing law enforcement, and shirking court orders. Here, the defendant is charged with unlawfully possessing a firearm and ammunition, but the conduct giving rise to the charge involved an armed robbery in a crowded, well-lit parking lot. Initially charged by the state, the San Francisco Superior Court held the defendant pending trial from July 2024 until the instant federal criminal complaint was filed. Now the defendant points to his term of incarceration as the basis for his release arguing that he did not use drugs or break the law while detained. The government asserts that his past behavior while free speaks more persuasively to the risk of danger to the community

U.S. MEM. ISO APPEAL OF RELEASE ORDER
25-mj-70736 MAG

and flight the defendant poses. To comply with the law while in custody is not a strong indication of his ability to comply with conditions of release or regard for public safety while on pretrial release. Instead, the defendant's history provides ample evidence that no condition or combination of conditions will reasonably assure his appearance at future proceedings or the safety of the community.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   The Charged Offense

On July 6, 2024, at approximately 1:40 a.m., D.O. and S.S. left Origin nightclub located at 1358 Filmore Street, San Francisco. As the pair walked to S.S.'s car located in a Safeway parking lot, the defendant and another individual followed them asking whether D.O.'s necklace was real and where D.O. lived.[1]

When D.O. and S.S. reached the vehicle parked in a well-lit, crowded parking lot, the defendant and the other suspect held guns to D.O.'s stomach, and the defendant told D.O., "you don't want to die today." S.S. tried to deescalate the situation, and the defendant told her, "you can get popped too." The defendant then demanded D.O.'s necklace, and D.O. complied because he feared for his life. The defendant also tried to take D.O.'s car keys, but D.O. said his vehicle was not on the scene. And with that the defendant and his accomplice left the scene.

D.O. and S.S. reported the robbery to the police, and at approximately 2 a.m., SFPD officers located a suspect matching the victims' description of one of the suspects (ultimately identified as Victor Anthony Mason Jr.) in front of the nightclub. When they attempted to make contact, the defendant ran. After a brief foot pursuit, the defendant was arrested in the parking lot where the robbery occurred.[2] During the foot pursuit, Officer Mohammed heard a clanking sound like a metal object hitting the pavement. Once the defendant was in handcuffs, Officer Mohammed found a loaded Ruger semiautomatic pistol on the ground in the parking lot along the defendant's flight path—approximately five paces from the location of arrest.

---

[1] The pair first encountered the defendant and his associate when they entered the club around 11:30 p.m. when the defendant's associate asked whether S.S. was single, and D.O. responded she was not.

[2] The alleged conduct took place within a short distance. The club and the parking lot are connected by a promenade that intersects the block.

The victims separately positively identified the defendant in a cold show approximately one hour after the offense. Both victims also identified the firearm that Officer Mohammed found on the scene as the firearm that the defendant used during the offense. Subsequent DNA testing confirmed the defendant's possession of the firearm and ammunition.

## II.     The Defendant's Criminal History

The defendant has a lengthy and violent criminal history. He has sustained felony and misdemeanor convictions and numerous arrests for domestic violence, robbery, fleeing and obstructing law enforcement. The defendant was charged and convicted in four separate cases in 2010, 2012, 2014, and 2022, and probation was revoked in each case.

His earliest conviction, from December 2010, stemmed from initial charges of carjacking, first degree robbery, and conspiracy. The defendant was ultimately convicted of second degree robbery, a felony, and sentenced to 1 year in jail and 3 years' probation. One of the conditions of his term of probation included a firearm restriction. While on probation, he was arrested two times, once in February 2012 (petty theft and obstruction of an officer) and another in October 2012 (battery of a spouse). The February offense resulted in conviction on new charges while the October offense was resolved by probation revocation in lieu of new charges. Regarding the former, an arrest warrant issued in January 2013, and the defendant was arrested on May 30, 2013.[3] The defendant was ultimately sentenced July 2013.

The defendant violated the term of probation in that case by committing a new offense in August 2014 for which he was convicted of battery of a spouse. Then in May 2015, records indicate he violated parole and was sentenced to 3 years' imprisonment. Just two months later, the defendant was arrested again for battery of a spouse and violation of probation.

In April 2021, he was arrested for illegally possessing a firearm and ammunition. Then, in August 2021, the defendant was arrested for child cruelty, fleeing police officers in a vehicle, assault on a police officer, obstruction of a police officer, driving under the influence, and vandalism. The defendant was ultimately convicted of one felony count of fleeing police officers in a vehicle and two

---

[3] Per Contra Costa Superior Court records in case number 04001751791.

U.S. MEM. ISO APPEAL OF RELEASE ORDER
25-mj-70736 MAG

misdemeanor counts of obstruction of a police officer.

Finally, the defendant committed the instant offense while on probation. The San Francisco District Attorney's office charged the defendant with first degree armed robbery, criminal threats with use of a firearm, felon in possession of a firearm, unlawful possession of a loaded firearm, unlawful possession of ammunition, and obstructing a police officer. The defendant was detained pending trial in that matter until the state dismissed its charges in light of the federal complaint.[4]

### III.    The Procedural History

The defendant first appeared in Court on June 24, 2025. The government moved for detention, and the defense sought release. Pretrial Services issued a report finding that the defendant was both a risk of non-appearance and a danger to the community, but nevertheless recommended release because of the defendant's willingness to participate in treatment for mental health and substance abuse disorders. The Court held a detention hearing on June 27, 2025, at which time Judge Hixson ordered the defendant released to residential treatment program, a $25,000 unsecured bond co-signed by the defendant's aunt, and other conditions of release. The Court granted the government's request for a stay of release pending appeal. Dkt. 10. The government filed a motion requesting a briefing schedule and hearing, and a hearing was set for July 1, 2025. Dkt. 13.

## LEGAL STANDARD

On appeal of a magistrate judge's release order, this Court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The record is not limited to those facts that were presented to the magistrate judge; rather, the Court should "make its own 'de novo' determination of the facts," and the "ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." *Id.* at 1193.

This Court can detain a defendant pretrial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other

---

[4] The defense noted that the defendant had a pending request for diversion when the federal complaint was filed. Dkt. 14. That is correct. The San Francisco District Attorney's office opposed the defendant's petition, and the mental health court had not yet ruled.

U.S. MEM. ISO APPEAL OF RELEASE ORDER
25-mj-70736 MAG

person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk. *Id.* at § 3412 (b), (c). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. *Id.* at § 3142(f)(2)(B). A finding that a defendant presents a risk of non-appearance must be supported by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. *See* 18 U.S.C. § 3142(f)(2)(B).

The Court considers four factors to determine whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including his character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## ARGUMENT

### I. Danger to the Community

While the defendant is charged with being a felon in possession, the underlying conduct is armed robbery. He followed S.S. and D.O. to their car and threatened both of their lives while holding a semiautomatic Ruger pistol to D.O.'s stomach. The defendant was not deterred by the number of onlookers in the well-lit, crowded parking lot. This offense alone shows that the defendant poses a significant danger to the community.

Moreover, at the time he possessed the gun, the defendant was also on probation for fleeing from law enforcement in a car chase that weighs in favor of detention. *See United States v. Daniels*, 2020 WL 10731886, at *5 (N.D. Cal Sept. 28, 2020) (detaining a defendant charged with § 922(g)(1) who was on active parole for a prior firearm offense). Additionally, the fact that the defendant—as a convicted felon—possessed a loaded firearm weighs in favor of detention. *See, e.g., United States v. Brewer*, 2013 WL 791312, at *2 (N.D. Cal. 2013) (carrying a loaded firearm weighed in favor of detention because it

"indicate[d] that he may be violent and pose a danger to the community").

The defendant's criminal history further demonstrates that he is a danger to the community. He has at least two arrests and one conviction related to domestic violence, his first felony conviction was for second degree robbery, and his most recent felony conviction involved a car chase. These offenses show that he is danger to the people he knows and the community at large. Moreover, the defendant is committed to possessing a firearm even though he has long been prohibited from doing so. The defendant has been prohibited from possessing firearms since 2010, but that has not stopped him. He was arrested in April 2021 for unlawfully possessing a firearm and ammunition and again in July 2024 as charged here. In sum, he has repeatedly abused his partner(s), obstructed and fled police officers, and committed robbery. The defendant poses too much risk of danger to the public, and the only way to safeguard the community from the defendant is to detain him pretrial.

## II.     Risk of Nonappearance

It is true that the defendant has ties to the community, a limited work history, and a family member willing to serve as a surety (but not as a custodian). While these factors weigh favorably to his "history and characteristics" under 18 U.S.C. § 3142(g)(3); his "history and characteristics" also includes his "past conduct" and "criminal history" that paint a different picture.

Since 2010, the defendant has ignored court orders and violated probation and parole, and thus poses a risk of nonappearance. In each of his state cases, the court revoked the defendant's probation, and in some instances, he sustained new convictions for those probation violations. Additionally, a bench warrant issued in January 2013 in one of the defendant's state criminal cases, and the defendant was in the wind for four months until he was arrested in May 2013. The defendant's criminal history is full of examples of his willingness to evade law enforcement and shirk court orders. *United States v. Cazares*, 445 F. Supp. 3d 425, 433 (N.D. Cal. 2020) (granting revocation of pretrial release while noting the defendant has a long history of breaking the law while on probation and nothing suggests he can now be trusted to obey the terms of his release).

Now, the sole reason to believe the defendant will follow conditions of release is that he is no longer under the influence of illegal substances (because he spent nearly one year in state custody) and is willing to engage in mental health and substance abuse treatment. This is small comfort when the

location of the proposed residential treatment program is a short walk from the place of the instant criminal offense.  While he has extensive ties to the community, those ties have not dissuaded him from breaking the law and endangering the safety of others.

Additionally, the weight of the evidence and the potentially significant sentence he faces if convicted, increase the risk that he will flout court-ordered conditions of release and flee.  *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely that he will flee").  Among other things, the defendant's weapon was found on the flight path the defendant took to flee police officers (just five paces from where he was arrested), D.O. identified it as the weapon pressed to his stomach, and DNA testing corroborated the defendant's possession.  *See generally* Compl., Servat Aff.

Pretrial services agrees that the defendant poses both a danger to the community and a flight risk, but nevertheless believes he will comply with the strictures of a residential treatment program.  The government strongly disagrees.  No conditions of release can reasonably assure his appearance because he has no qualms violating conditions as is well demonstrated by his past conduct.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court revoke the Magistrate Court's release order and detain the defendant pending trial.

DATED:  June 30, 2025                                  Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


  */s/ Sara Henderson*
SARA E. HENDERSON
Assistant United States Attorney

U.S. MEM. ISO APPEAL OF RELEASE ORDER
25-mj-70736 MAG